# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OTERRA A/S and OTERRA, LLC,<br><br>　　Plaintiffs<br><br>　　v.<br><br>WILD FLAVORS, INC. and ARCHER-<br>DANIELS-MIDLAND CO.,<br><br>　　Defendants. | C.A. No. 23-1376-JHS |
| WILD FLAVORS, INC.,<br><br>　　Counterclaim Plaintiff<br><br>　　v.<br><br>OTERRA A/S and OTERRA, LLC,<br><br>　　Counterclaim Defendants. | |

**PLAINTIFFS/COUNTERCLAIM DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION TO STRIKE EXPERT REPORT OF ALIREZA ABBASPOURRAD, PH.D**

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1
II. ARGUMENT ........................................................................................................................ 1
   A. Exclusion is Warranted ................................................................................................ 1
   B. Reliance on Improper Materials Warrants Exclusion ............................................. 2
   C.   Incorrect Understanding of Claim Interpretation Warrants Exclusion .......................... 5
   D.   Inappropriate Legal Opinions Warrant Exclusion ......................................................... 7
III. CONCLUSION .................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases***

*B. Braun Melsungen AG v. Teramo Med. Corp.*,
   549 F. Supp. 2d 210 (D. Del. 2010).................................................................................. 1, 2

*Biovail Lab'ys Int'l SRL v. Cary Pharms. Inc.*,
   Civ. No. 09-605-JJF-LPS, 2010 WL 2132021 (D. Del. Jan. 28, 2020)...................................... 1

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)................................................................................................................ 1

*Elcock v. v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000).................................................................................................... 2

*Every Penny Counts, Inc. v. Am. Express Co.*,
   563 F.3d 1378 (Fed. Cir. 2009)............................................................................................... 2

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004)............................................................................. 8

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
   No. 17-cv-00313-MSG, 2019 WL 10092522 ..................................................................... 3, 4

*Medrad, Inc. v. MRI Devices Corp.*,
   401 F.3d 1313 (Fed. Cir. 2005)............................................................................................... 7

*ONDEO Nalco Co. v. Eka Chems., Inc.*,
   No. 01-537-SLR, 2003 WL 1524658 (Fed. Cir. 2005)........................................................... 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .......................................................................................... 4, 5

*Scripps Clinic & Research Found. v. Genentech, Inc.*,
   927 F.2d 1565 (Fed. Cir. 1991)............................................................................................... 3

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*,
   459 F.3d 1311 (Fed. Cir. 2006)............................................................................................... 2

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
   659 F.3d 1376 (Fed. Cir. 2011).......................................................................................... 2, 3

*All emphases herein added unless otherwise noted.

**Rules**

Fed .R. Evid. 702 ............................................................................................................... 1

I.      INTRODUCTION

As established in Oterra's Opening Brief ("Oterra's Brief") in support of its Motion to Strike the expert report of Alireza Abbaspourrad, Ph.D. (D.I. 72), Dr. Abbaspourrad's claim construction opinions relied on improper extrinsic information and were not based on the correct methodology and principles, and should therefore be excluded as unreliable. Wild's attempts to defend their reliance on the report by highlighting Dr. Abbaspourrad's credentials and pointing out the length of the document does nothing to change the fact that his opinions are unreliable and not helpful to the court in claim construction.

II.     ARGUMENT

   A.      **Exclusion is Warranted**

In an effort to dissuade the Court from properly exercising its authority pursuant to Rule 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), Wild states that "striking an expert's opinion at claim construction is an 'extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." (D.I. 74, at 6 (quoting *Biovail Lab'ys Int'l SRL v. Cary Pharms. Inc.*, C.A. No. 09-605-JJF-LPS, 2010 WL 2132021, at *2 (D. Del. May 26, 2010)).) However, *Biovail* excluded a supplemental expert declaration as a consequence of allegedly being untimely and unauthorized by the court's scheduling order. *See id.*, at *3. The court in *Biovail* did not address excluding expert testimony based on whether its content complied with the requirements of Fed. R. Evid. 702 and *Daubert*, and the case is inapposite.

As explained in *B. Braun Melsungen AG v. Teramo Med. Corp.*, 549 F. Supp. 2d 210 (D. Del. 2010), before a court may consider additional factors in deciding to preclude expert testimony, the "party offering expert testimony [must] show that it meets all of the standards for admissibility," including the "distinct substantive restrictions on the admission of expert

1

testimony: qualifications, reliability, and fit." *Id.* at 222 (citing *Elcock v. v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). Imposing limits on the expert testimony proffered by a party is not an "extreme sanction" or "extraordinary overreach" as argued by Wild. (*See* D.I. 74, at 6-7.) Rather, it is the correct application of the "substantive restrictions on the admission of expert testimony." *B. Braun Melsungen AG*, 549 F. Supp. 2d at 222.

Thus, for the reasons explained in Oterra's Brief, Dr. Abbaspourrad's unreliable opinions, which unreliability Wild has not refuted, exclusion is warranted.

### B.     Reliance on Improper Materials Warrants Exclusion

Wild argues that (1) it was proper for Dr. Abbaspourrad to rely on the cited extrinsic materials characterizing the accused process and product to construe the claims, and (2) there was no harm in Dr. Abbaspourrad's reliance because it was only as background context to inform the claim construction process. Neither argument is correct, and both fail to refute Oterra's positions.

First, Wild asserts "it was entirely proper for Dr. Abbaspourrad to reference the technology at issue, including the accused products," and that "[t]he Federal Circuit has made clear that 'a trial court may consult the accused device for context that informs the claim construction process.'" (D.I. 74, at 8 (quoting *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1319 (Fed. Cir. 2006)). Wild cites additional Federal Circuit cases as alleged support for the proposition that the court may consider an accused product to provide context for claim construction. (*See id.* (citing *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011); *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1384 (Fed. Cir. 2009)). Wild's reliance on these cases is misplaced.

To be sure, Oterra does not disagree that **the Court** may consider the accused product or process **to the extent needed to frame the scope** of claim construction. *See, e.g., Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1383 (Fed. Cir. 2011) ("[while] the words of the claims

2

are construed independent of the accused product . . . the particular accused product (or process) is kept, in mind, for it is efficient to focus on the construction of only the disputed elements or limitations of the claims."). But that is not what Wild is arguing was proper; rather, Wild is arguing that ***an expert's*** use of such extrinsic evidence "can be useful and probative in interpreting disputed claim terms." (D.I. 74 at 7.) None of the cases Wild cites supports this position and Wild's arguments that their expert's use of this extrinsic evidence was proper are disingenuous.

Here, the Court has already received information regarding the accused product or process (e.g., in pleadings, previous motions, etc.). It was improper for Wild to ask Dr. Abbaspourrad to rely on such information in arriving at his claim construction opinions, as doing so violates the well-known tenet that "claim terms should be construed ***independent of the accused product***, in light of the specification and the file history." *Scripps Clinic & Research Found. v. Genentech, Inc*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). His testimony should be excluded for this reason alone.

Similarly, Wild argues that "the law is also clear that use of a term in industry can be relevant extrinsic evidence to consider during claim construction," and that "[e]xperts and courts sometimes rely on industry practice as background in determining how a person skilled in the art would have understood claim language." (D.I. 74, at 8 (citing *Kyowa Hakka Bio, Co. v. Ajinomoto Co.,* C.A. No. 17-313-MSG, 2019 WL 10092522, at *1 (D. Del. Apr. 1, 2019). As an initial matter, the issue in *Kyowa* was whether to allow a deposition of a representative ***of the patentee*** to be taken in order to ascertain ***how the patentee itself understood the disputed claim language***. *See id*. Moreover, the question focused on whether the deposition had the potential to lead to evidence which might be helpful to the court during claim construction—not whether it would actually be considered during the claim construction process. *See id. Kyowa*, therefore, does not support Wild's position.

3

Moreover, Wild's arguments that Dr. Abbaspourrad's reliance on either Wild's product or the accused product was proper to inform the meaning or "use of a term in industry" are inapt in that they focus on products and information that did not exist at the time of the invention. It is well-settled that how a term is construed focuses on how it would have been understood ***by a person of ordinary skill in the art, at the time of the invention***. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). That is, even if it was proper for Dr. Abbaspourrad to consider how the claim terms are used "in industry" based on Wild's, Oterra's, or Ecoflora's materials (it was not), since the materials considered by Dr. Abbaspourrad regarding the accused product and process, as well as Wild's own product, was prepared for marketing or regulatory purposes and well after the alleged date of the invention, and because Wild has not demonstrated that the materials evidence how a person of skill in the art would have understood the terms in 2008, Wild's justifications hold no merit.

Second, Wild states that "[t]he few paragraphs of his opinion that reference the accused products occurred ***after*** his detailed consideration and analysis of the intrinsic evidence." (D.I. 74 at 9.) However, Wild's argument regarding the order in which information was presented in the declaration is not only irrelevant, but it is also internally inconsistent with its argument that Dr. Abbaspourrad only considered the accused product "as ***background context*** to inform the claim construction process." (D.I. 74, at 8 n. 1.). Wild's argument in this regard is also clearly contradicted by the testimony in the Declaration itself, and Dr. Abbaspourrad's testimony that he did not form his claim construction opinions until after he considered the Wild, Oterra, and Ecoflora materials. (*See, e.g.,* D.I. 60 ¶¶ 143, 157, 167, 178; D.I. 72-2, 271:10-272:4.)

Accordingly, because Dr. Abbaspourrad's opinions are based on improper extrinsic evidence that was prepared for marketing or regulatory purposes more than 10 years after the patent was filed, his opinions are unreliable and not helpful to the court, and should be excluded.

### C.  Incorrect Understanding of Claim Interpretation Warrants Exclusion

Wild contends that "Oterra does not contest that in his declaration Dr. Abbaspourrad properly applied the legal standards for claim construction and considered the specification and prosecution in forming his opinions." (D.I. 74, at 11.)  Obviously this is wildly inaccurate, as it is Dr. Abbaspourrad's improper methodology for arriving at his claim construction opinions—which became clear during his deposition—that is the basis for Oterra's Motion to Strike.

And Wild's arguments regarding Dr. Abbaspourrad's methodology miss the mark.  Wild states that "Oterra appears to contend that Dr. Abbaspourrad failed to consider the specification and the prosecution history when construing the claims," and argues that Dr. Abbaspourrad applied sound claim interpretation methodology because he "considered the specification and prosecution in forming his opinion." (*Id*., at 10, *see id*. at 11.)  However, regardless of whether Dr. Abbaspourrad claims to have considered the specification and the prosecution history, and regardless of whether or not he had changed his opinions by his deposition, his deposition testimony demonstrates that he did not properly consider the claims in view of the specification and prosecution history in forming the opinions expressed in his Declaration, as required.

First, as explained in Oterra's Brief, Dr. Abbaspourrad testified that he did not form his opinions on the meaning of the disputed terms in view of the specification—rather, he formed his opinion on the data in the specification based on the language in the claims. (D.I. 72-2, 227:20-228:3.) By relying on cited the language of the reissue claims, which were not even in existence when the specification was originally written, as the basis for an opinion about information missing from Table 1 in the specification, Dr. Abbaspourrad demonstrated a lack of reliable methodology.

5

Wild responds by arguing that this fundamental flaw in Dr. Abbaspourrad's methodology is irrelevant, stating that "if a given experiment results in an increased in -b value as measured by the Hunter Lab scale, the experiment will also result in an increased -b value as measured by the CIE LAB scale—a reality readily understood by a POSITA."[1] (D.I. 74, at 12.) Wild's arguments are not only a red herring but also improperly attempt to revise the clear answer Dr. Abbaspourrad provided during his deposition in order to change the substance thereof. Rather, as explained in Oterra's Brief, the relationship or correlation between the Hunter Lab scale and CIELAB scale measurements is not the issue—it is Dr. Abbaspourrad's understanding of the role of the specification and claims of RE'695 for purposes of his claim construction opinions. The fact that Dr. Abbaspourrad testified during his deposition that he performed his claim construction analysis ***backward*** makes his entire declaration unreliable.

Second, even if Dr. Abbaspourrad did "consider" the prosecution history, he testified that it was his (incorrect) understanding that the prosecution history is not used in claim interpretation unless "the meaning is not clear." (D.I. 72-2, 201:3-25.) While Wild argues that his testimony "affirmed his consideration of the prosecution statements by the applicant and how they interact with statements in the specification," this argument again misses the mark. (D.I. 74, at 11-12.)

As an initial matter, whether or not Dr. Abbaspourrad "considered" the prosecution history or how it interacts with statements in the specification is not the issue—the issue is whether Dr. Abbaspourrad took into consideration the prosecution history and statements by Wild therein when arriving at his opinions regarding the meanings of the claim terms. Reading the prosecution history and disregarding statements therein because the meaning of the term is clear on its face is

---

[1] And Wild's argument in this regard is contradicted by Dr. Giusti's testimony that "a slight change in b value on the negative side of the scale using the Hunter Lab scale ***may not be detected*** using the CIELAB scale." (*See* D.I. 61-2, ¶ 34.)

6

manifestly erroneous. *Phillips*, 415 F.3d at 1313, citing *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history.").

And importantly, the testimony cited by Wild confirmed Dr. Abbaspourrad's understanding that he was not required to consider the prosecution history in interpreting the language of claim 45 ***because the meaning of the claim was clear***:

> Q: Whether you took into consideration the -- the prosecution statements by the applicant and how they interact with how the statements during prosecution interact with the statements in the specification?
>
> **A: I have a general understanding, but again, in the context of what I was asked to do, which was evaluating the language in the Claim 45, I think I have a general understanding which is clear for me to be able to explain or opine on the language in the Claim 45.**

(D.I. 72-2, 202:20-203:6.)  This testimony, read in context of the preceding testimony (*see id.*, 201:3–202:19), in fact demonstrates that because Dr. Abbaspourrad had a "clear" understanding of the language of claim 45, he did not believe it was necessary to consider the prosecution history.

As such, Dr. Abbaspourrad's deposition testimony evidences a lack of understanding of the methodology he was required to use in arriving at his claim construction opinions, regardless of whether or not he read the specification and prosecution history.  The opinions set forth in his Declaration are therefore unreliable and should be stricken.

### D. Inappropriate Legal Opinions Warrant Exclusion

Wild's arguments that Dr. Abbaspourrad's legal opinions and improper testimony regarding issues that are either properly presented in the parties' briefs or solely within the purview of the court are incorrect.  First, Oterra is, of course, not contesting that "Dr. Abbaspourrad was required to consider the prosecution history." (D.I. 74, at 15.)  However, Dr. Abbaspourrad was

7

presented as a technical expert "in food chemistry, food additives, and food colorants. (D.I. 74, at 3.) It was, therefore, improper for him present a summary of the prosecution history and give his interpretations of what the patent examiner's intentions in withdrawing or not making a rejection may have been, or whether Wild did or "did not intend to … limit Claim 45," as this is information that should be presented in the parties' briefs, and up to the court to decide. *See ONDEO Nalco Co. v. Eka Chems., Inc.,* No. 01-537-SLR, 2003 WL 1524658, at *3 (D. Del. Mar. 21, 2003); *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004).

Wild argues that if Dr. Abbaspourrad's testimony regarding the prosecution history is stricken, Dr. Giusti's should be as well. (D.I. 74, at 15.) This argument is disingenuous as Dr. Giusti's Declaration simply quoted pertinent portions of the prosecution history and explained how, from a technical perspective, her opinion was consistent with those statements. (*See, e.g.*, D.I. 60-2, ¶¶ 47-48, 71-72, 130-133, 139.) In contrast to Dr. Abbaspourrad's testimony, Dr. Giusti's testimony demonstrates an appropriate and proper evaluation and presentation of the prosecution history by a technical expert.

### III.     CONCLUSION

For the reasons above, Wild has not refuted the bases provided in Oterra's Brief for excluding Dr. Abbaspourrad's testimony as unreliable and not helpful in the claim construction process. Oterra respectfully requests that the Court strike the Declaration and preclude Dr. Abbaspourrad from testifying at the hearing on claim construction.

| | |
|---|---|
| Dated: May 2, 2025 | **SAUL EWING LLP** |
| | |
| | *Michelle C. Streifthau-Livizos* |
| OF COUNSEL: | James D. Taylor, Jr. (#4009) |
| Michelle E. O'Brien, Esq. | Michelle C. Streifthau-Livizos (#6584) |
| Shauna M. Wertheim, Esq. | 1201 N. Market Street, Suite 2300 |
| Joanna L. Cohn, Esq. | P.O. Box 1266 |
| THE MARBURY LAW GROUP, PLLC | Wilmington, Delaware 19899 |
| 11800 Sunrise Valley Drive, 15th Floor | (302) 421-6800 |
| Reston, VA 20191-5302 | james.taylor@saul.com |
| 703-391-2900 | michelle.streifthau-livizos@saul.com |
| mobrien@marburylaw.com | |
| swertheim@marburylaw.com | *Attorneys for Plaintiffs Oterra A/S and Oterra, LLC* |
| jcohn@marburylaw.com | |