**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| OTERRA A/S and OTERRA, LLC,<br><br>Plaintiffs,<br>v.<br><br>WILD FLAVORS, INC., and ARCHER DANIELS MIDLAND CO.<br><br>Defendants. | C.A. No. 23-1376-JHS |
| WILD FLAVORS, INC.,<br><br>Counterclaim Plaintiff,<br>v.<br><br>OTERRA A/S and OTERRA, LLC.<br><br>Counterclaim Defendants. | |

October 19, 2026

**REPORT AND RECOMMENDATION OF SPECIAL MASTER**
**JAMES J. ROHN, ESQ.**

## I. INTRODUCTION

Before the Special Master is Plaintiff/Counterclaim-Defendants Oterra A/S and Oterra, LLC (collectively, "Oterra")'s August 12, 2026, Motion for Leave to Supplement Final Invalidity Contentions" (the "Motion for Leave") (Doc. 227). For the reasons set forth below, the Special Master recommends that the Court deny the Motion for Leave.

## II. FACTS AND PROCEDURAL HISTORY

Oterra initiated this action on December 4, 2023 by filing a Complaint seeking declaratory judgment of non-infringement and invalidity of U.S. Patent No. RE46,695 (the "RE'695 Patent"). (Doc. 1). On September 3, 2024, Defendants Wild Flavors, Inc. and Archer Daniels Midland Co.

(collectively, "Wild Flavors") filed an Answer and Amended Counterclaim against Oterra, alleging infringement of the RE'695 Patent. (Doc. 26). On September 5, 2025, after extensive briefing and a two-day *Markman* hearing, the Court issued a Claim Construction Order (Doc. 119) and Opinion (Doc. 120) construing nine disputed claim terms. The Court's Claim Construction Opinion offers a thorough overview of the RE'695 Patent, the technology at issue, and the procedural history to that point. (*See* Doc. 120, at 4-9).

Shortly after the Court issued its Claim Construction Order, Oterra's then-lead counsel, the Marbury Law Group, withdrew and was replaced by Oterra's current-lead counsel, Jerold I. Schneider Esq. ("Attorney Schneider"). (Doc. 123; Doc. 125). Oterra's local counsel, Saul Ewing, LLP ("Saul Ewing") continued to represent Oterra (and still does to this day).

On October 7, 2025, Oterra requested a 90-day extension of all deadlines in the Court's Scheduling Order (Doc. 34), including Oterra's October 17, 2025 deadline to serve its final invalidity contentions. (Doc. 130). Wild Flavors opposed Oterra's requested extension and raised what it claimed were deficiencies in Oterra's document production. (Doc. 131). On October 27, 2025, the Court held a telephone conference regarding the Parties' discovery disputes. (Doc. 149). To allow Attorney Schneider to get up to speed, the Court extended all case deadlines by thirty days, rather than the ninety days requested by Oterra. (Doc. 149 at 31:11-32:9). While the Court acknowledged the difficult position Attorney Schneider was in, it noted that, in the future, change of counsel would not be a reason to extend case deadlines. (Doc. 149 at 34:9-14). On October 27, 2026, the Parties filed a Stipulated Amended Scheduling Order consistent with the Court's ruling. (Doc. 138). Consistent with the Amended Scheduling Order, Oterra served its final invalidity contentions on November 17, 2025. (Doc. 142).

The scheduling order was amended four additional times. (Doc. 154; Doc. 189; Doc. 210; Doc. 225). The operative case deadlines are as follows:

i. Close of Fact Discovery: March 12, 2026;

ii. Initial Expert Reports: March 25, 2026;

iii. Rebuttal Expert Reports: May 22, 2026;

iv. Reply Expert Reports: June 12, 2026;

v. Close of Expert Discovery: July 17, 2026;

vi. Opening Case Dispositive Motions: August 13, 2026;

vii. Pretrial Conference: November 6, 2026; and

viii. Trial: November 17, 2026.

(Doc. 154; Doc. 189; Doc. 210; Doc. 225).

On August 4, 2026, Oterra's counsel alerted the Special Master and Wild Flavors of a number of issues concerning its invalidity contentions. (Doc. 255 at 5). In response, Wild Flavors stated that Oterra had not previously attempted to meet and confer on these issues and that Wild Flavors would oppose any attempt by Oterra to amend or supplement its invalidity contentions.

Oterra filed its Motion for Leave (Doc. 227) on August 12, 2026. The next day, Oterra moved for summary judgement on several of its newly identified invalidity contentions. (Doc. 229). On August 24, 2026, Wild Flavors moved to strike Oterra's new invalidity theories from its Motion for Summary Judgment. (Doc. 250). Oterra acknowledges that, if its Motion for Leave is denied, its new invalidity theories should not be considered during summary judgment. (Doc. 228 at 5) ("Oterra will be presenting [the new invalidity contentions] in its Motion for Summary Judgment with the understanding that if leave is not granted, the supplemental issues will not be considered.").

## III. STANDARD OF REVIEW

Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To establish good cause, the moving party must show that it acted diligently. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006). "Unlike the liberal policy for amending pleadings, the philosophy behind amending infringement and invalidity contentions is decidedly conservative, as it is designed to 'require parties to crystallize their theories of the case early in the litigation.'" *Brit. Telecommc'ns PLC v. IAC/InterActiveCorp*, 2020 WL 3047989, at *2 (D. Del. June 8, 2020) (quoting *O2 Micro*, 467 F.3d at 1366)). A party seeking to supplement or amend its infringement/invalidity contentions after the deadline for final contentions must "demonstrat[e] diligence both in discovering that an amendment was necessary and in moving to amend after that discovery." *Cognipower LLC v. Fantasia Trading, LLC*, 2024 WL 4651276, at *1 (D. Del. Oct. 23, 2024) (quoting *Brit. Telecommc'ns PLC,* 2020 WL 3047989, at *2 (D. Del. June 8, 2020)). Put differently, the moving party must show that it "could not have known that [it] needed to earlier assert the additional [contention]." *State Farm Mut. Auto. Ins. Co. v. Amazon.com, Inc.*, 2024 WL 4145022, at *2 (D. Del. Sept. 11, 2024).

If the moving party fails to show diligence, then good cause does not exist and the inquiry ends. *Id.* It is only once the moving party establishes diligence that "other considerations pertinent to the good cause inquiry come into play, including the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment." *Brit. Telecommc'ns PLC*, 2020 WL 3047989, at *2 (collecting cases).

## IV. DISCUSSION

Oterra seeks to add four new invalidity contentions[1]:

1. "improper recapture under 35 U.S.C. § 251 based on pH ranges";
2. "indefiniteness under § 112 on the term 'at a pH of from ***about*** 3 to ***about*** 8'";
3. "lack of enablement under 35 U.S.C. § 112 based on pH"; and
4. "violation of the 'original patent requirement."

(Doc. 255 at 1) (emphasis in original).

As Oterra acknowledges, each of these contentions are based upon the RE'695 Patent's file history, which Oterra has had since November 6, 2024, at the latest. (*See* Doc. 34 at 3) (Wild Flavors to produce official file history for the asserted patent by November 6, 2024). Moreover, Oterra was able to make timely contentions under several of the same theories.[2] (*See* Doc. 228 at 5-8) (listing Oterra's timely identified contentions regarding improper recapture, indefiniteness, and lack of enablement). Oterra nevertheless points to several events and circumstances which it contends show diligence; the Special Master will address each in turn.

### a. Substitution of Counsel

Oterra notes that Attorney Schneider entered the case shortly before its invalidity contentions were due and at a time when Oterra was subject to significant discovery obligations. (Doc. 228). As an initial matter, Attorney Schneider has been diligent in litigating this complex and demanding case through to the eve of trial. The relevant inquiry, however, is not whether any individual attorney or law firm has acted diligently, but whether the moving ***party*** has been

---

[1] Oterra originally also sought to add a fifth contention regarding "obviousness under § 103 based on new prior art", based on a 1996 publication Oterra's expert recently found in his house. (Doc. 228 at 4). In its Reply, Oterra stated that it was "withdraw[ing] its [Motion to Supplement] as to this [contention], but without prejudice to seek leave to amend in the event the Court amends the schedule and/or reopens discovery for any reason." (Doc. 255 at 1, n. 1).

[2] At oral argument before the Special Master, Oterra conceded that it would have been possible to raise its new contentions prior to the deadline for final invalidity contentions.

diligent, from the outset of litigation. *See Barry v. Stryker Corp.*, 2023 WL 2733652, at *4 (D. Del. Mar. 20, 2023) ("The focus of the good cause inquiry is on the diligence of the moving ***party***") (emphasis added).

For this reason, "[c]ourts have consistently held that the substitution of counsel does not support a finding of good cause to make untimely amendments to infringement contentions, invalidity contentions, or other pleadings. Rather, the diligence inquiry must include an assessment of the diligence of the original attorneys." *Brit. Telecommc'ns PLC*, 2020 WL 3047989, at *3 (collecting cases). Oterra's new invalidity contentions are based on information in the RE'695 Patent file history. At any point since November 6, 2024 (if not earlier), one of Oterra's many past or present attorneys ***could*** have reviewed the file history and identified the new invalidity theories, but none did so. Again, the Special Master need not (and does not) fault any of current or former Oterra's attorneys. It is enough that Oterra possessed the information necessary to timely identify its new invalidity contentions and, for whatever reason, did not do so. *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, 2025 WL 5081334, at *2 (D. Del. Apr. 10, 2025) ("When examining a party's diligence and whether 'good cause' exits courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired.").

**b. The *Enviro Tech* Decision**

Oterra argues that a recent Federal Circuit decision, *Enviro Tech Chem. Servs., Inc. v. Safe Foods Corp.*, 174 F.4th 919 (Fed. Cir. 2026), justifies its late assertion of new invalidity theories.[3] (Doc. 255 at 1-2). Specifically, in *Enviro Tech*, the Federal Circuit held that the term "about", as used in relation to a range of pH levels in a patent for methods of treating poultry during

[3] *Enviro Tech* was issued on May 4, 2026. Attorney Schneider submitted a declaration stating that he first reviewed the decision sometime between July 6, 2026 and July 28, 2026. (Doc. 256 at ¶¶ 4-8).

processing, was indefinite. *Enviro Tech,* 174 F.4th at 923. The RE'695 Patent also uses "about" in connection with a pH range. As an initial matter, *Enviro Tech's* analysis of "about" was in the context of indefiniteness only. Thus, while Oterra relies on *Enviro Tech* with regards to each of its three new contentions[4] regarding the term "about", *Enviro Tech* would, at most, only support permitting Oterra's new indefiniteness theory.

More significantly, *Enviro Tech* did not announce a new rule of law.[5] *Enviro Tech* merely reiterated decades-old Federal Circuit precedent that terms like "about" and "approximately" "are not inherently definite or indefinite". *Enviro Tech.*, 174 F.4th at 922 (internal quotations omitted). Had Oterra timely identified its new indefiniteness theory regarding "about", *Enviro Tech* would likely be a helpful citation, but it was hardly ***necessary*** for Oterra to identify "about" as potentially indefinite.[6] *See Amgen, Inc. v. Chugai Pharm. Co., Ltd.*, 927 F.2d 1200, at 1217 (Fed. Cir. 1991) (holding that "about 160,000" was indefinite). This theory was available to Oterra long before it served its final invalidity contentions. That Oterra may find the theory more attractive in light of recent developments in the relevant case law does not excuse Oterra's failure to disclose it in a timely fashion. *See Brit. Telecommc'ns PLC*, 2020 WL 3047989, at *3 ("Courts have [] uniformly held that a change in legal strategy does not constitute good cause to amend infringement or invalidity contentions.") (collecting cases).

[4] Improper recapture, lack of enablement, and indefiniteness.

[5] Oterra's counsel conceded this point during oral argument before the Special Master.

[6] Nor is *Enviro Tech* necessarily dispositive of indefiniteness in this case. The *Enviro Tech* Court explained that, to determine whether a term like "about" is indefinite, a court must analyze the claims, specification, prosecution history, and extrinsic evidence to determine whether the numerical range in question is "reasonably certain based on the technological facts of the particular case". *Enviro Tech.*, 174 F.4th at 922 (internal quotations omitted).

**c. Dr. Abbaspourrad's Deposition**

After reviewing *Enviro Tech*, Oterra's counsel determined that he should question Wild Flavor's expert, Dr. Alireza Abbaspourrad, regarding the pH range claimed in the RE'695 patent at his July 28, 2026 deposition. (Doc. 256 at ¶¶ 7-9). In Oterra's view, Dr. Abbaspourrad's purported inability to provide cogent responses to these questions, "confirmed for Oterra that it had a basis to add defenses of § 112 indefiniteness, § 112 lack of enablement, § 251 recapture, and § 251 original patent". (Doc. 255 at 2-5). Oterra's analysis is backwards. Oterra cannot reasonably rely on Wild Flavor's expert to analyze the strengths and weaknesses of Oterra's potential theories. *See* Fed. R. Civ. P. 26 advisory committee's notes to 1970 amendment ("A party must as a practical matter prepare his own case in advance of [expert discovery], for he can hardly hope to build his case out of his opponent's experts."). Oterra has its own expert, Dr. Winston Boyd[7], who could have assessed the new invalidity contentions for it. Moreover, Oterra cannot fault Dr. Abbaspourrad for failing to provide satisfactory answers to questions regarding invalidity issues that he and Wild Flavors had no reason to believe were part of this case.

**d. The European Patent Office Decision**

Wild Flavors and Oterra are engaged in parallel litigation before the European Patent Office regarding European Patent EP 3 868 214, which corresponds to the RE'695 Patent. (Doc. 228 at 4). On July 10, 2026, the European Patent Office ("EPO") issued a written decision, which states, in part, that during the European proceedings, Wild Flavors "counter-argued that a chemically synthesized amino acid is not suitable for obtaining a natural colorant." (Doc. 228 at

[7] Dr. Boyd's expert reports do not address Oterra's new invalidity theories.

4). Oterra contends that this constitutes an "admission against interest" by Wild Flavors.[8] (Doc. 228). While Oterra discusses the EPO's decision in its briefing, it does not explain how the decision relates to Oterra's new invalidity contentions, none of which concern the term "natural". Oterra's explanation of the decision's significance implicates infringement, not invalidity. (*See* Doc. 228 at 4) ("During those proceedings, Wild Flavors made the admission against interest that the use of glycine did not provide a **natural** color… Here Oterra's supplier uses man-made glycine, which in view of Wild Flavors' admissions **cannot** result in the claimed natural color.") (emphasis in original). Indeed, while Oterra moves for summary judgment on several of the new invalidity theories, it only discusses the EPO decision in the context of infringement.[9] (*See* Doc. 282 at 9) (arguing that Wild Flavors' purported "admission against interest" before the EPO is evidence of non-infringement). Without any connection to the new invalidity theories, Oterra cannot rely on the EPO decision to demonstrate diligence.

In sum, none of the justifications proffered by Oterra change the fact that the contentions it now seeks to assert were available to it from the outset of this case. Upon this record, Oterra has failed to demonstrate diligence. *See Cytvia Sweden Ab v. Bio-Rad Lab'ys, Inc.* 2021 WL 431508, at *1 (D. Del. Feb. 8, 2021) ("Courts presume a party lacks diligence if the party had knowledge of the facts supporting its proposed amendment before the deadline to amend."); *see also Nautilus Neurosciences, Inc. v. Wockhardt USA LLC*, 2013 WL 7901901, at * 8 (D.N.J. Jan. 23, 2013) ("by failing to sufficiently explain why they were unable to uncover, despite diligent efforts to do so,

---

[8] Wild Flavors argues that the EPO decision is inadmissible, irrelevant, and does not constitute an admission against interest. The Special Master will address these issues in a forthcoming report and recommendation regarding the Parties' Motions for Summary Judgment.

[9] Oterra's Reply Brief in Support of its Motion for Summary Judgment, it identifies what it contends is another "admission against interest" by Wild Flavors before the EPO, this one supporting invalidity for non-enablement. (Doc. 282 at 8). Oterra has not moved for leave to supplement its invalidity contentions in relation to this purported admission.

the defense of indefiniteness prior to submitting their contentions, Defendants fail to carry their burden of demonstrating that they acted diligently.”).

**e. Other Factors**

Oterra’s lack of diligence is fatal to its good cause argument. *See State Farm Mut. Auto. Ins. Co.*, 2024 WL 4145022, at *2 (“if [the moving party] has not been diligent the inquiry ends (as good cause has not been demonstrated).”). Nevertheless, for the sake of completeness, the Special Master will briefly address other relevant factors that would require consideration had diligence been established. *See Brit. Telecommc’ns PLC*, 2020 WL 3047989, at *2 (holding that, upon a showing of diligence, a court may consider other consideration such as “the importance of the new information, the difficulty of locating the new information, any gamesmanship that is evident from the untimely disclosure, and the potential prejudice to the opposing party that would result from permitting the belated amendment.”).

Oterra’s new contentions are obviously important. Any of them could potentially invalidate the claims-at-issue of the RE’695 Patent. Likewise, the Special Master has seen no evidence of gamesmanship or bad faith conduct by Oterra or its counsel. These factors both weigh in favor of granting Oterra leave to supplement.

On the other side of the ledger, Oterra should not have had any difficulty identifying the information that forms the basis of its new contentions. As previously discussed, the new invalidity theories are all based upon the RE’695 patent’s file history, which Wild Flavors produced in November 2024. This factor weighs against Oterra.

Lastly, allowing Oterra to assert four new invalidity contentions at this late juncture would prejudice Wild Flavors. Wild Flavors would need to, at minimum, investigate Oterra’s new theories, prepare expert reports, and depose Oterra’s expert again. (Doc. 254). Oterra argues that

additional discovery is unnecessary because the new contentions are "issues of law". (Doc. 228 at 4). While Wild Flavors may or may not be able to defend against Oterra's new contentions without additional discovery, there is no dispute that Wild Flavors would have been entitled to discovery (fact and/or expert) on the new contentions had they been timely disclosed.[10] Oterra's new indefiniteness challenge would also require reopening claim construction. This would necessarily require continuing the trial currently scheduled for November 17, 2026 into 2027. This factor weighs against Oterra.

## V. RECOMMENDATION

Oterra has failed to establish good cause. Accordingly, the Special Master recommends that the Court deny Oterra's Motion for Leave to Supplement Final Invalidity Contentions (Doc. 227); deny, in part, Oterra's Motion for Summary Judgment (Doc. 229)[11] as to all invalidity theories[12] not disclosed in its Final Invalidity Contentions (Doc. 142)[13]; and deny Wild Flavors' Motion to Strike Oterra's New Invalidity Theories from Oterra's Summary Judgment Motion (Doc. 250) as moot.

Respectfully submitted,

<u>*/s/ James J. Rohn Esq.*</u>
James J. Rohn, Esq., Special Master

---

[10] During oral argument before the Special Master, Oterra conceded that Wild Flavors should be given the opportunity to engage in expert discovery if leave to supplement is granted.

[11] Oterra acknowledged that its new invalidity contentions should not be considered on summary judgment if its Motion for Leave was denied. Doc. 228 at 5) ("Oterra will be presenting [the new invalidity contentions] in its Motion for Summary Judgment with the understanding that if leave is not granted, the supplemental issues will not be considered.").

[12] Specifically, Sections II (indefiniteness relating to "about"), III.A (recapture relating to pH range), IV (original patent requirement), V (portions regarding lack of enablement relating to pH range only), and VII (obviousness based on new prior art) of Oterra's Opening Brief in Support of its Motion for Summary Judgment (Doc. 230). The Special Mater will address the remainder of Oterra's Motion for Summary Judgment in a forthcoming Report and Recommendation.