IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OTERRA A/S and OTERRA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WILD FLAVORS, INC. and ARCHER-DANIELS-MIDLAND CO.,<br><br>Defendants. | CIVIL ACTION<br>NO. 23-1376 |

**ORDER**

**AND NOW**, this 12th day of November 2026, upon consideration of Plaintiffs' Motion for Summary Judgment (Doc. No. 229), and its Memoranda, Exhibits, Response, and Reply (Doc. Nos. 230, 231, 232, 234, 265, 266, 267, 268); Defendants' Motion for Summary Judgment of Infringement of U.S. Patent RE46,695 (the "'695 Patent") (Doc. No. 233), and its Memoranda, Exhibits, Response, and Reply (Doc. Nos. 234, 235, 240, 241, 260, 261, 262, 282, 283, 284, 285, 287, 289, 292, 299); Defendants' Motion for Summary Judgment on Plaintiffs' Invalidity Defenses (Doc. No. 236), and its Memoranda, Exhibits, Response, and Reply (Doc. Nos. 237, 240, 241, 259, 261, 262, 282, 283, 284, 285, 287); Defendants' Motion to Exclude Certain Opinions and Testimony of Winston Boyd, Ph.D (Doc. No. 238), and its Memoranda, Exhibits, Response, and Reply (Doc. Nos. 239, 240, 241, 264, 291, 292); Plaintiffs' Motion in Limine 1–4 (Doc. No. 303), and its Memoranda, Response, and Reply (Doc. Nos. 314, 324); Defendants Motion in Limine (Doc. No. 304), and its Memoranda, Exhibits, Response, and Reply (Doc. No. 313, 326, 327); Defendants' Conditional Motion to Shift the Burden of Proof Under 35 U.S.C. § 295 (Doc. No. 305), and its Memoranda, Exhibits, Response, and Reply (Doc. Nos. 306, 307, 316, 317); the Report and Recommendation of Special Master James Rohn, Esquire (Doc. No. 336); Plaintiffs'

Objections to the Special Master's Report and Recommendation (Doc. No. 340); and Defendants' Response to the Objections (Doc. No. 342) it is **ORDERED** that the Report and Recommendation (Doc. No. 336) is **APPROVED and ADOPTED.**[1] It is further **ORDERED** that:

---

[1] This case concerns U.S. Patent No. RE46,695 (the "'695 Patent"), which provides a method for preparing blue dye. On November 4, 2026, Special Master James Rohn, Esquire, issued a Report and Recommendation ("R&R") on seven (7) pending motions (Doc. No. 336). On November 9, 2026, Plaintiffs Oterra A/S and Oterra LLC, (collectively, "Oterra") filed Objections to the R&R (Doc. No. 340). On November 10, 2026, Defendants Wild Flavors, Inc. and Archer-Daniels Midland Co. (collectively, "Wild Flavors") filed a Response to Oterra's Objections (Doc. No. 342). Oterra raises seven (7) objections to the R&R. (See Doc. No. 340.)

Pursuant to Federal Rule of Civil Procedure 53(f)(3)–(4), objections to the Special Master's findings of fact and conclusions of law are reviewed de novo. Fed. R. Civ. P. 53(f)(3)–(4). After conducting de novo review of all the issues Oterra has raised, the Court will overrule all seven (7) of Oterra's objections.

**Objection 1: Shifting Burden of Proof Under 35 U.S.C. § 295**

Oterra disagrees with the Special Master's recommendation that the burden of proof be shifted under 35 U.S.C. § 295. (Doc. No. 340 at 1.) Oterra contends "it is an abuse of discretion to change the rules . . . after the evidence is closed and the matter is under advisement." (Id.)

"In actions alleging infringement of a process claim, the court may impose a presumption that the accused infringer's product was made by the patented process and may shift the burden of proving non-infringement to the accused infringer if the court finds: '(1) that a substantial likelihood exists that the product was made by the patented process, and (2) that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine.'" Dasso Int'l, Inc. v. Moso N. Am., Inc., No. 17-1574, 2021 WL 4427168, at *2 (D. Del. Sept. 27, 2021) (quoting 35 U.S.C. § 295).

The Court agrees that burden-shifting under Section 295 is appropriate under these circumstances. The parties do not dispute element one, which requires "that a substantial likelihood exists that the product was made by the patented process." § 295(1). As to element two, which requires "that the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable to so determine," Oterra acknowledges in its Objections that it "had opposed discovery 'directly' from Ecoflora by deposition and/or by site inspection." (Doc. No. 340 at 1.) Oterra cannot provide incomplete discovery and then argue it is entitled to summary judgment because of that incomplete discovery. To permit this would contradict the policy behind Section 295: That "the accused infringer is in a far better position to determine the actual manufacturing process than the patentee, [so] fairness dictates that the accused, likely the only party able to obtain this

information, reveal this process or face the presumption of infringement." Creative Compounds, LLC v. Starmark Laby's, 651 F.3d 1303, 1314–15 (Fed. Cir. 2011).

And while Oterra argues that burden-shifting at this stage is an "abuse of discretion," courts exercise wide discretion in determining when Section 295 should come into play. Nutrinova Nutrition Specialties & Food Ingredients GmbH v. Int'l Trade Comm'n, 224 F.3d 1356, 1360 (Fed. Cir. 2000) ("The patentee has every right to urge the court to apply § 295 when circumstances warrant it; likewise, the court has every right to exercise its discretion in determining at what point in the decisional process the statute will be brought into play."); Creative Compounds, 651 F.3d at 1311 (upholding district court's application of burden-shifting in resolving summary judgment motion).

Therefore, burden-shifting under Section 295 was appropriate, and Oterra's objection will be overruled.

**Objection 2: Entitlement to Summary Judgment on Claim 52's Invalidity**

Oterra argues it is entitled to summary judgment on the invalidity of Claim 52, because that claim is not enabled. (Doc. No. 342 at 2–3.) Specifically, Oterra asserts the Special Master wrongfully applied In re Wands, 858 F.2d 731 (Fed. Cir. 1988), instead of Amgen Ibc. v. Sanofi, 598 U.S. 594 (2023), in analyzing whether the claim was enabled. (See id.)

To meet the enablement requirement, a patent's specification must describe "the manner and process of making and using [an invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains . . . to make and use the same." 35 U.S.C. § 112(a). "Because patents are presumed valid, lack of enablement must be proven by clear and convincing evidence." ALZA Corp. v. Andrx Pharms., LLC, 603 F.3d 935, 940 (Fed. Cir. 2010).

In Wands, the Federal Circuit delineated eight factors to determine if a patent is invalid for lack of enablement. See Wands, 858 F.2d at 737. Despite Oterra's argument that Amgen displaced these factors, the Federal Circuit has recognized that the Wands factors still control enablement claims. Baxalta Inc v. Genentech, Inc., 81 F.4th 1362, 1362 (Fed. Cir. 2023) ("We do not interpret Amgen to have disturbed our prior enablement case law, including Wands and its factors."). As such, the Court agrees with the Special Master's application of the Wands factors. Oterra's objection about the application of Wands will be overruled.

And in applying the Wands factors, the Special Master came to the correct conclusion: that a genuine issue of material fact exists on Claim 52's enablement. Oterra's expert, Dr. Boyd, opines that multiple variables in Claim 52, including heating times, temperatures, and co-processing materials, require a person having ordinary skill in the art ("POSITA") to engage in undue experimentation before achieving the "blue" color Claim 52 contemplates. (Doc. 241-30 at 19–20.) By contrast, Wild Flavors' Expert, Dr. Abbaspourrad, provided opinions that Claim 52 is valid as enabled. (Doc. No. 237 at 13, 15–16.) This conflicting testimony

represents a genuine dispute of material fact, rendering summary judgment in favor of Oterra improper.

Accordingly, Oterra is not entitled to summary judgment on Claim 52's validity, and whether Claim 52 is enabled will proceed to trial.

**Objection 3: "Plain and Ordinary Meaning" of "Suitable Food-Grade Source"**

Oterra asserts that whether glycine is included in the "plain and ordinary meaning" of "suitable food-grade source" should be left to a jury, and for this reason, Wild Flavors is not entitled to summary judgment on infringement. (Doc. No. 340 at 3–5.) Oterra avers that "the use of the 'plain and ordinary' meaning standard means that glycine is permitted to be within the scope of step (a)(ii) of patent claim 45 but not required or mandated to be within that step." (Id. at 5.)

In making this objection, Oterra attempts to re-package a claim construction question as a jury question. Allowing Oterra to argue that "plain and ordinary meaning" does not encompass glycine would contradict this Court's Claim Construction Opinion. (See Doc. No. 120 at 46.) The Claim Construction Opinion rejected Oterra's argument that "suitable food-grade source" excludes synthetic chemicals, reasoning that "the patentee did not clearly and unmistakably disclaim the use of pure chemicals, including isolated amino acids, in step (a)(ii)." (Id. at 41–49, 52.) Because this is a claim construction issue, it does not raise a triable genuine dispute of material fact.

Nevertheless, Oterra argues the Special Master improperly equated "food-grade source" with "food-grade quality." (Doc. No. 340 at 4.) To Oterra, because FDA regulations state glycine is "edible only in amounts of less than 0.02%," glycine may fall outside the plain and ordinary meaning of "suitable food-grade source." (Doc. No. 260 at 11.) The distinction between "food-grade source" and "food-grade quality" is not legally significant under the Claim Construction Opinion. In fleshing out the "plain and ordinary meaning" of "suitable food-grade source," the Opinion quoted Oterra's expert, who stated food-grade "is understood to mean non-toxic and safe for consumption." (Doc. No. 120 at 46.) On the record at summary judgment, it is undisputed that glycine is non-toxic and safe for consumption (albeit in small quantities), which meets the construed meaning of "food-grade source."

Thus, summary judgment in favor of Wild Flavors on infringement is proper, because the Court has already construed "suitable food-grade source" as encompassing glycine. This objection will be overruled.

**Objection 4: Improper Recapture Under In re McDonald**

Oterra argues it is entitled to summary judgment on a recapture theory because the '695 Patent improperly recaptured materials excluded during the prosecution of the '319 Patent. (Doc. No. 340 at 6–7.) Oterra argues the '695 Patent improperly recaptured the following: (1) materials falling outside the '319 Patent's enumerated list, (2) milk, and (3) liquified material. (Doc.

No. 259 at 4–6.) After review, the Court agrees with the Special Master that the recapture rule does not apply to any of these terms.

"Under the reissue statute, a patentee may surrender a patent and seek reissue 'enlarging the scope of the [original patent's] claims' if 'through error without any deceptive intent' he claimed 'less than he had a right to claim in the [original] patent. . . .'" MBO Laby's, Inc. v. Becton, Dickinson, & Co., 602 F.3d 1306, 1313 (Fed. Cir. 2010). "[T]he recapture rule provides that a [reissue patent] will not be granted to 'recapture' claimed subject matter that was surrendered during prosecution to obtain the original claims." In re McDonald, 43 F.4th 1340, 1345 (Fed. Cir. 2022).

While the recapture rule originally only applied to concessions made in response to prior art rejections, the Federal Circuit has recently clarified that the rule is not "limited to that context." Id. at 1347. Despite this expanded scope, the recapture rule still only applies when an applicant makes a concession that "intentional[ly] surrender[s]" a claim's scope. Id. at 1348. See also Seattle Box Co. v. Indus. Crating & Packing, Inc., 731 F.2d 818, 826 (Fed. Cir. 1984) (holding recapture rule does not apply where "there is no evidence that [patentee's] amendment of its originally filed claims was in any sense an admission that the scope of that claim was not in fact patentable").

First, Oterra asserts the '695 Patent improperly recaptured material falling outside of the '319 Patent's enumerated list by omitting the enumerated list. (Doc. No. 259 at 6.) However, the patent prosecution history reveals that the enumerated list was added to overcome an enablement rejection under § 112. (Doc. No. 240 ¶ 127.) Wild Flavors has said, "The Examiner rejected the original broad language as failing to enable 'the otherwise limitless possibilities of reactants.' The applicant responded by adding the list 'so as to list a specific group of materials from which the juice or extract is derived.'" (Doc. No. 240 ¶ 127.) While Oterra correctly states that recapture is no longer limited to prior art rejections after In re McDonald, the record does not reflect that Wild Flavors added the enumerated list to the '319 patent to intentionally limit the scope of their patent. Instead, Wild Flavors added this list to clarify which materials could constitute a food-grade source. (See id.) Accordingly, the recapture rule would not apply to the enumerated list.

Second, Oterra avers that the '695 Patent recaptured "milk." (Doc. No. 259 at 7.) Despite the '319 Patent's explicit mention of "milk," Oterra claims milk did not fall within the scope of the '319 Patent because it did not fit the requirements of being "made by the chemical or mechanical liquefaction of a solid material." (Id.) However, "milk" can appear in a solid form and be re-liquified, falling within the scope of the '319 Patent. Thus, because "milk" falls within the scope of the '319 Patent, the '695 Patent did not improperly recapture milk.

Third, Oterra contends the '695 Patent improperly recaptures non-liquified materials because it does not contain the word "liquified." (Id. at 6–7.) But like the enumerated list, the omission of this term was not an intentional surrender of the patent's scope. In fact, during prosecution, Wild Flavors stated adding the term "liquified" "should not really affect the scope of the claims since, in the context utilized, the term 'extract' meant the product of a squeezing action to pull

juice out of the defined material or of liquifying the defined material." (Doc. No. 240 ¶ 128.) Therefore, the omission of the term "liquified" does not amount to improper recapture because it did not impact the scope of the original claim.

Accordingly, Oterra's objection regarding recapture will be overruled.

**Objection 5: Statements During European Patent Office (EPO) Proceedings**

Oterra disagrees with the Special Master's recommendation that the Court (a) exclude a statement Wild Flavors made during European Patent Office (EPO) proceedings, and (b) deny summary judgment on those grounds. (Doc. No. 340 at 6–7.) Oterra claims the Accused Methods do not meet the '695 Patent's "natural colors" limitation because Wild Flavors made an "admission against interest" during an EPO proceeding in September 2026. (Doc. No. 230 at 15–16.)

Upon review, there are multiple reasons this statement should be excluded. First, Oterra has failed to disclose this "natural colors" invalidity theory in any responses to interrogatories or supplements to responses to interrogatories. (See Doc. No. 268-8 at 10–11.) In fact, up until this point in the case, Oterra has stated that the only invalidity defense it offers is "other juice or material from a suitable food-grade source," not the new "natural colors theory." (Id.) Oterra cannot defeat summary judgment by introducing a new invalidity theory at this stage of litigation.

Second, the "admission against interest" Oterra plans to bring in support of this novel theory presents evidentiary issues. The statement is hearsay-within-hearsay. The statement derives from an EPO decision that reads, "[Wild Flavors] counter-argued that a chemically synthesized amino acid is not suitable for obtaining a natural colorant." (Doc. No. 232-02 Ex. 2 at 8–9.) This statement is the EPO's interpretation of an argument Wild Flavors may have made during oral argument. At best, it's an accurate summary; at worst, it is a paraphrase. While Oterra correctly points out Wild Flavors' statement may fall within Fed. R. Evid 802(d), this does not account for the outer layer of hearsay: the EPO's decision. See Fed. R. Evid. 805 ("Hearsay within hearsay is not excluded by the rule against hearsay if each part of the combined statements conforms with an exception to the rule.").

Third, the Federal Circuit has cautioned against giving undue weight to European patent proceedings, as patent law is a national practice and varies from country to country. See, e.g., Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc., 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) (cautioning that district courts should not give undue weight to European Patent proceedings, as the "theories and laws of patentability vary from country to country, as do examination practices"). While Oterra asserts Wild Flavors' statement is a relevant factual admission, a different body of law–European patent law–shaped the facts that may or may not have been relevant in that proceeding. The Court cannot determine how "relevant" this admission would be in view of the different controlling legal system.

Fourth, given the above concerns, the risk of undue prejudice from admission of this statement substantially outweighs its probative value. See Fed. R. Evid. 403. The probative value of this statement is slim because it is hearsay-within hearsay: it is the EPO's interpretation of an argument Wild Flavors' European counsel may have made in a European patent proceeding. A jury may give undue weight to the EPO's interpretation of this statement, which risks prejudice to Wild Flavors. Furthermore, admission of this statement risks creating a trial-within-a-trial, which could be highly confusing to a jury otherwise unfamiliar with patent law. Therefore, this statement qualifies for exclusion under Federal Rule of Evidence 403.

Accordingly, this statement is properly excluded from trial, and Oterra's objection will be overruled.

**Objection 6: Lack of Entitlement to "Priority Date" for Claim 45**

Oterra argues the Special Master's findings regarding the "invention date" for purposes of obviousness are inconsistent. (Doc. No. 340 at 8.)

To claim entitlement to the priority date of the provisional application, a patent application must satisfy Section 112's written description and enablement requirements as to the invention claimed in the non-provisional application. New R.R. Mfg., L.L.C. v. Vermeer Mfg. Co., 298 F.3d 1290, 1294 (Fed. Cir. 2002).

The Special Master found that Oterra presented a genuine issue of material fact as to the "priority date" for Claim 52 because, as discussed supra, the claim may present enablement issues. (Doc. No. 336 at 13.) By contrast, the Special Master found Oterra could not make a "priority date" argument for Claim 45, based on his conclusion that no enablement issue exists for that claim. (Id.) In its Objections, Oterra argues "These two results are inconsistent. If an enablement issue is reserved for trial, then it is premature to conclude lack of entitlement to the provisional application filing date against Oterra." (Doc. No. 340 at 8.)

The Special Master's findings are not inconsistent, and the Court agrees with the Special Master's findings on this issue. A genuine dispute of material fact exists as to "priority date" for Claim 52 because Claim 52 may present enablement issues. However, Claim 45 does not present similar enablement issues. Therefore, this objection will be overruled.

**Objection 7: Lack of Enablement for All Claims**

Oterra contends the Special Master improperly resolved a factual issue regarding enablement for the remaining claims. (Doc. No. 340 at 9.) Oterra does not contest the Special Master's recommendation that their expert Dr. Boyd's testimony should be excluded because it is inconsistent with the Court's Claim Construction Opinion. (Id. at 8–9.) However, Oterra argues Dr. Boyd's testimony relied on the testimony of Wild Flavors' expert, Dr. Abbaspourrad. (Id.) It claims "[Dr. Abbaspourrad's] concession of the speculative nature of the experiments . . . was sufficient to present the issue to the jury even in the absence of any testimony from Oterra's expert." (Id.)

1. Plaintiffs' Motion for Summary Judgment (Doc. No. 229) is **DENIED**.
2. Defendants' Conditional Motion to Shift the Burden of Proof Under 35 U.S.C. § 295 (Doc. No. 305) is **GRANTED**. Pursuant to Section 295, the Accused Products shall be presumed to have been made by the process claimed in Claims 45–62 of the 695 Patent, and Plaintiffs shall bear the burden of establishing that the Accused Products were not made by that process.
3. Defendants' Motion for Summary Judgment of Infringement of the '695 Patent (Doc. No. 233) is **GRANTED**.
4. Defendants' Motion to Exclude Certain Opinions and Testimony of Winston Boyd, Ph.D (Doc. No. 238) is **GRANTED in part** as to Dr. Boyd's lack of enablement opinions regarding "'different' blue colors" and "desired colors," as set forth at Paragraphs 63 and 83–89 of his Expert Report. (Doc. No. 241-30.)
5. Defendants' Motion for Summary Judgment on Plaintiffs' Invalidity Defenses (Doc. No. 236) is **GRANTED in part** and **DENIED in part**, as follows:

---

This argument is unpersuasive. First, while acknowledging that Oterra has not cited to where Dr. Boyd relied on Dr. Abbaspourrad's testimony or the source of Dr. Abbaspourrad's testimony, Dr. Abbaspourrad's statements in the record do not seem to support Oterra's enablement theory. At the deposition, Dr. Abbaspourrad said, "I don't want to speculate or hypothesize. What I learn as expert and a POSA is that if I follow these instruction, I will get -b value increases after completing the step (b) in this process." (Doc. No. 232 Ex. B at 134.) Dr. Abbaspourrad's statement supports that the claim is enabled, as he said following the instructions would lead to the intended result of more negative -b values. (See id.)

Second, despite this alleged reliance on Dr. Abbaspourrad's deposition, Dr. Boyd ultimately concluded that "so long as you bring together genipin and a primary amino acid, you're going to get that reaction." (Doc. No. 290 at 6–9.)

Accordingly, Dr. Boyd's testimony was properly excluded and Oterra is not entitled to summary judgment on enablement for Clam 45. Oterra's objection will be overruled.

a. Plaintiffs' invalidity defense of improper recapture is **DISMISSED**;

b. Plaintiffs' invalidity defense of lack of enablement is **DISMISSED**, except as to lack of enablement theories concerning Claim 52;

c. Plaintiffs' claim that the '695 Patent is not entitled to the filing date of its March 28, 2008 provisional application due to lack of enablement is **DISMISSED**, except as to lack of enablement theories concerning Claim 52; and

d. Plaintiffs' claim that that the '695 Patent is not entitled to the filing date of its March 28, 2008 provisional application due to lack of written description is **DISMISSED**.

6. Plaintiffs' Motions in Limine Nos. 2 and 4 (Doc. No. 303) are **DENIED**.

7. Defendants' Motion in Limine No. 3 (Doc. No. 304) is **DENIED AS MOOT**.

8. Defendants' Motion in Limine No. 4 (Doc. No. 304) is **GRANTED**. The EPO Opposition Decision (Doc. No. 232-2) and European Patent Application No. EP 4 245 151 (Doc. No. 283-2) are **EXCLUDED**.

BY THE COURT:

/s/ Joel H. Slomsky

JOEL H. SLOMSKY, J.