IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OTERRA A/S and OTERRA, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>WILD FLAVORS, INC. and ARCHER-DANIELS-MIDLAND CO.,<br><br>Defendants. | CIVIL ACTION<br>NO. 23-1376 |

**ORDER**

**AND NOW**, this 19th day of November, 2026, upon consideration of Plaintiffs' Motions in Limine Nos. 1 and 3 (Doc. No. 303), Defendants' Response (Doc. No. 314), and Plaintiffs' Reply (Doc. No. 324); Defendants' Motions in Limine Nos. 1, 2, and 5 (Doc. No. 304), Plaintiffs' Response (Doc. No. 313), and Defendants' Reply (Doc. No. 326); Defendants' Motion to Exclude Certain Opinions and Testimony of Winston Boyd, Ph.D (Doc. No. 238), Plaintiffs' Response (Doc. No. 264), and Defendants' Reply (Doc. Nos. 291, 292); Defendants' Motion to Preclude Ms. Eva Wilnegger from Testifying at Trial (Doc. No. 318) and Plaintiffs' Response (Doc. No. 344); and the Report and Recommendation of James Rohn, Esquire, (Doc. No. 351), Plaintiffs' Objections to the Report and Recommendation (Doc. No. 355), and Defendants' Response in Opposition to Plaintiffs' Objections (Doc. No. 360), it is ordered that the Report and Recommendation (Doc. No. 351) is **APPROVED and ADOPTED**.[1] It is further **ORDERED** that:

[1] Before the Court is Special Master James Rohn's Report and Recommendation ("R&R") (Doc. No. 351) on Plaintiffs Oterra A/S and Oterra LLC's (collectively, "Oterra") Motions in Limine Nos. 1 and 3 (Doc. Nos. 303), Defendants Wild Flavors, Inc. and Archer-Daniels-Midland Co.'s (collectively "Wild Flavors") Motions in Limine Nos. 1, 2, and 5 (Doc. No. 304), Wild Flavors' Motion to Exclude Certain Opinions and Testimony of Winston Boyd, Ph.D (Doc.

No. 238), and Wild Flavors' Motion to Preclude Ms. Eva Wilnegger from Testifying at Trial (Doc. No. 318). On November 16, 2026, at 12:32 P.M., Oterra filed Objections to the R&R (Doc. No. 355). That same day, Wild Flavors filed a Response in Opposition (Doc. No. 360).

Pursuant to Federal Rule of Civil Procedure 53(f)(3)–(4), objections to the Special Master's findings of fact and conclusions of law are reviewed de novo. Fed. R. Civ. P. 53(f)(3)–(4). After conducting de novo review of the Special Master's R&R, the Court will rule as follows.

**Objection 1: Dr. Boyd's Testimony on Wild Flavors' FDA Exemption**

As an initial clarification, the following discussion is limited to Dr. Boyd's testimony, and not to the Food and Drug Administration ("FDA")-related exhibits discussed on the record with counsel for the parties on November 17 and 18, 2026. Oterra objects to the Special Master's recommendation that portions of Dr. Boyd's testimony on Wild Flavors' FDA exemption should be excluded. (Doc. No. 355 at 1–2.)

Since 2010, Wild Flavors has been selling its product under a statute that exempts certain products, including juice-derived products, from formal FDA approval. (Doc. No. 264 at 2.) By contrast, since 2023, Oterra has been selling its product under formal FDA approval its supplier, Ecotera, received. (Id.) Oterra claims that the procedure by which Ecoflora obtained formal approval "delayed entry into the market by several years." (Id. at 2.) At trial, Oterra plans on using the fact that Wild Flavors sold its product under an FDA exemption to (1) rebut Wild Flavors' non-obviousness argument and (2) rebut Wild Flavors' argument that it is entitled to lost profits. (Doc. No. 355 at 1–2.)

The fact that Wild Flavors sold its product under an FDA exemption is relevant to both theories. First, Wild Flavors may rebut Oterra's obviousness argument by pointing to the long-felt need and commercial success of its product under Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966). Oterra can counter this assertion by arguing that the commercial success of Wild Flavors' products was due to the exemption, whereas other competitors had to wait for formal FDA approval. Second, to demonstrate entitlement to lost profits, Wild Flavors must show that it would have made certain sales but for Oterra's infringement. King Instruments Corp. v. Perego, 65 F.3d 941, 952 (Fed. Cir. 1995). Evidence that Wild Flavors sold its product under an exemption, while Oterra waited for FDA approval, would rebut Wild Flavors' argument that Oterra's non-exempt products prevented Wild Flavors from making sales. Therefore, to the extent Dr. Boyd wishes to testify about the fact that Wild Flavors sold its product under an FDA exemption, this evidence is relevant and admissible.

However, Oterra apparently sought to take this evidence one step further by arguing that (1) Wild Flavors misled the FDA, and (2) the FDA exemption was improperly granted. (Doc. No. 264 at 2–3.) Oterra writes, "Wild Flavors may attempt to negate obviousness by arguing the long felt need and commercial success of their product. The jury is entitled to consider if [Wild Flavors'] commercial success . . . was based on an accurate or inaccurate [FDA] submission by Wild Flavors." (Id.)

Evidence of (1) whether Wild Flavors misled the FDA and (2) whether the FDA exemption was properly granted should be excluded. First, it is unclear how an inquiry into Wild Flavors' conduct in obtaining the FDA exemption would fit the facts that remain in the case. See Fed. R. Evid. 401. Whether the FDA exemption was properly granted, or whether Wild Flavors misled the FDA in obtaining that exemption, does not weigh on commercial success or lost profits.

Second, Federal Rule of Evidence 403 strongly weighs in favor of exclusion. See Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ."). As explained in the previous paragraph, the probative value of this evidence is slim. Moreover, evidence that Wild Flavors was not "totally open and forthright in their submission to the FDA" could confuse the issues and mislead the jury, as the jury would give undue weight to tangential proceedings. It could also cause Wild Flavors undue prejudice by calling into question its credibility. Therefore, Rule 403 compels exclusion of this testimony.

In its Objections, Oterra contends it "is not arguing that Wild Flavors submitted anything incomplete, inaccurate, or improper to the FDA to obtain approval for their food colorant." (Doc. No. 355 at 1.) If that statement is true, Oterra's objection is unnecessary. The R&R contemplates Dr. Boyd giving some FDA-related testimony, as it recommended the Court defer ruling on qualifications until trial. (Doc. No. 351 at 3.) If Oterra "is not arguing that Wild Flavors submitted anything incomplete," then the proffered testimony would fall within the R&R's scope. Accordingly, this objection will be overruled.

**Objection 2: Reliance on Oterra's Scientists and Ecoflora**

To rebut willfulness, Oterra avers it should be permitted to introduce evidence that it relied on its own scientists and information available to Ecoflora. (Doc. No. 355 at 2.) Wild Flavors counters that this evidence should be excluded because Oterra had previously withdrawn its advice of counsel defense. (Doc. No. 360 at 2.) In response, Oterra argues it would be an "inferential leap" for the jury to assume that the opinions came from counsel, so the evidence should be admitted. (Doc. No. 355 at 2.)

During discovery in this case, Oterra had indicated that it planned on relying on the opinions of counsel to rebut willfulness. (Doc. No. 160 at 1–2.) When Wild Flavors responded that it would pursue subject-matter waiver of attorney-client privilege, Oterra sought to withdraw this defense. (Doc. No. 304 at 1.) The parties came to an agreement that if Oterra withdrew its advice of counsel defense, Wild Flavors would no longer seek subject-matter waiver. (Id.) As such, Oterra withdrew its advice of counsel defense, and Wild Flavors did not receive discovery on advice of counsel. (Id.)

In view of the developments discussed above, this evidence is properly excluded. First, Oterra previously withdrew its advice of counsel defense, so Wild Flavors did not obtain discovery on the subject. Without this discovery, Wild Flavors has no way to counter the witness' assertions. Second, the record indicates that many of the lay opinions Oterra seeks to offer

---

implicate advice of counsel. Luc Ganivet testified that the "final opinion" on freedom to operate came from the legal team. (Doc. No. 327-1 at 228.) Jakob Schjoerring Thyssen has previously testified that he "relied on legal counsel," and that "[a]ll opinions were shared with patent lawyers." (Doc. No. 327-2 at 93, 107.) While Oterra contends it would take an "inference" for the jury to determine the opinions came from counsel, the evidentiary record shows that counsel influenced the witness' opinions in the case. Accordingly, this evidence is properly excluded.

Therefore, this objection will be overruled.

**Objection 3: Evidence of Ecoflora's Patent to Rebut Willfulness**

Oterra objects to the Special Master's recommendation that evidence of the Ecoflora patent is inadmissible to rebut willfulness. (Doc. No. 355 at 3–4.)

Evidence of Ecoflora's patent should not be admitted to rebut willfulness. The Federal Circuit has repeatedly recognized that an infringer possessing a patent is not relevant to their "good faith" in the willful infringement context. Carnegie Mellon Univ. v. Marvell Tech. Grp., 807 F.3d 1283, 1301 (Fed. Cir. 2015) (rejecting argument that infringer possessing own patent showed the infringer's "good-faith basis for believing that it was not infringing"); Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d 1294, 1309 (Fed. Cir. 2001) (finding infringer possessing own patent "totally irrelevant" to question of willfulness). An infringer may possess a patent and still infringe another patent, because a patent confers the right to exclude, not necessarily the right to create the invention. Carnegie Mellon, 807 F.3d at 1300; Rolls-Royce Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1110 n.9 (Fed. Cir. 1986) ("[T]hat someone has a patent right to exclude others from making the invention claimed in his patent does not mean that his invention cannot infringe claims of another's patent broad enough to encompass, i.e., to 'dominate,' his invention."). Therefore, the Court agrees with the Special Master that this evidence should be excluded.

Oterra further argues that the Special Master erred in citing to Prolitec Inc. v. ScentAir Techs., LLC, No. 20-984, 2024 WL 341342, at *8 (D. Del. Jan. 30, 2024), to justify its recommendation that the evidence be excluded. (Doc. No. 355 at 3.) Oterra contends Prolitec is limited to infringement, not willful infringement, so it cannot be used to justify exclusion. (See id.) But the rationale behind Prolitec is relevant here. The Prolitec court barred evidence of an infringer's own patent under Federal Rule of Evidence 403, citing the risk that the jury would mistakenly believe a patent confers the "right to practice" the technology. Id. at *8–9. Similarly here, evidence of Ecoflora's patent could mislead the jury that possession of a patent justifies willful infringement because a patent confers the "right to practice" the invention. And even if the Court were to accept Oterra's argument that Prolitec should not apply, the other precedent cited above establishes that an infringer's possession of a patent cannot be used to rebut willfulness. Therefore, this objection will be overruled.

**Objection 4: Exclusion of Ms. Eva Wilnegger's Testimony**

Oterra takes issue with the Special Master's recommendation that Ms. Eva Wilnegger, Oterra's

European counsel, be precluded from testifying. (Doc. No. 355 at 4.) To the extent Oterra seeks Ms. Wilnegger to testify about the "natural colors" theory, this theory has been removed from this case. (See Doc. No. 349 at 6–7.) Therefore, this testimony is properly excluded.

Alternately, Oterra wishes for Ms. Wilnegger to testify about statements made by Wild Flavors' counsel during European Patent Office ("EPO") proceedings, which it argues are relevant to its Claim 52 enablement theory. (Doc. No. 355 at 4.) At the EPO proceedings, Oterra alleges Wild Flavors' European counsel argued that "only 'watermelon, lychee, cantaloupe and banana' would produce a blue color." (Doc. No. 344 at 6.)

The Court has previously recognized problems with introducing evidence of the EPO proceedings. (See Doc. No. 349 at 6–7.) First, the Federal Circuit has cautioned against giving undue weight to European patent proceedings, as they operate under a different system of law. See, e.g., Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc., 21 F.3d 1068, 1072 n.2 (Fed. Cir. 1994) (cautioning that district courts should not give undue weight to European Patent proceedings, as the "theories and laws of patentability vary from country to country, as do examination practices"). While Oterra argues this statement demonstrates the claim is not enabled, this statement was made in connection with a different patent before an entirely different regulatory board.

Second, Federal Rule of Evidence 403 compels exclusion of this evidence. See Fed. R. Evid. 403. The probative value of this evidence is fairly slim, as it concerned a different, European patent before a different patent agency. The evidence presents a strong risk of misleading the jury and confusing the issues, as the jury may give undue weight to statements made in a different proceeding. Therefore, this evidence is properly excluded, and Oterra's objection will be overruled.

**Objection 5: Evidence of Previous Court Orders**

Oterra urges the Court to exclude evidence of previous orders and rulings. It states, "[a] jury should not be evaluating the trial on a scorecard in which Wild Flavors has already scored numerous points, in their view." (Doc. No. 355 at 4.)

This objection is not warranted. The parties have jointly submitted Undisputed Facts, which reference the Court's prior summary judgment and claim construction orders. (Doc. Nos. 356-1, ¶¶ 34–35.) Furthermore, in accordance with the Court's recent order on bifurcation and presentation, the parties have submitted joint jury instructions on Oterra's infringement. (See Doc. No. 350.)

While Oterra argues that "[o]nly those parts of any order or decisions relevant to issues that the jury must decide should be presented and only to the minimum extent necessary," Wild Flavors agrees with this statement. (Doc. No. 355 at 5.) Wild Flavors writes it "does not intend to introduce 'details' from the summary judgment, enablement, or claim construction briefing or orders during trial. . . ." (Doc. No. 360 at 5.) At this stage, an outright prohibition on

1. Defendants' Motion to Exclude Certain Opinions and Testimony of Winston Boyd, Ph.D (Doc. No. 238) is **GRANTED in part** and **DENIED in part** as follows:

    a. **GRANTED** as to any opinion regarding the accuracy or truthfulness of Wild Flavors' statements or submissions to the FDA and/or whether any FDA approval or exemption was properly granted or obtained.

    b. The Court will defer ruling on the qualifications of Dr. Boyd to testify regarding other FDA-related matters. In addition, Dr. Boyd shall only be permitted to testify about matters discussed in his Expert Witness Report; and

    c. **DENIED as moot** as to Dr. Boyd's recapture and non-infringement opinions.

2. Plaintiffs' Motions in Limine Nos. 1 and 3 (Doc. No. 303) are **DENIED**.
3. Defendants' Motions in Limine Nos. 1, 2, and 5 (Doc. No. 304) are **GRANTED**.
4. Defendants' Motion to Preclude Ms. Eva Wilnegger from Testifying at Trial (Doc. No. 318) is **GRANTED**.

BY THE COURT:

/s/ Joel H. Slomsky
JOEL H. SLOMSKY, J.

---

references to summary judgment or claim construction is not necessary, and could cause unnecessary conflict with the pre-trial materials the parties have already submitted.

Therefore, this objection will be overruled.